STANLEY COMPANY OF AMERICA, A CORPORATION, PLAINTIFF-RESPONDENT, v. HERCULES POWDER COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued September 20, 1954—Decided October 25, 1954.

Mr. *Harold A. Price* argued the cause for the appellant (Mr. *Frank C. O'Brien*, of counsel; Messrs. *Pitney, Hardin & Ward*, attorneys).

Mr. *Samuel A. Gennett* argued the cause for the respondent (Mr. *Samuel Marion*, of the New York Bar, on the brief).

The opinion of the court was delivered by

BURLING, J. This is a civil action sounding in tort, grounded in alleged actionable negligence of the defendant, Hercules Powder Company, a corporation of the State of Delaware authorized to transact business in the State of New Jersey, for damages alleged to have been inflicted on the plaintiff, Stanley Company of America, also a Delaware corporation authorized to transact business in the State of New Jersey, namely structural damage to one of the plaintiff's theatres (termed the Baker Theatre) at Dover, New Jersey, and loss of profits during temporary suspension of performances at the theatre while repairs were being effected. The alleged cause of this damage was detonation on June 21, 1948 of explosives at a manufacturing plant operated by the defendant at Kenvil, New Jersey. The action was instituted by the plaintiff in the Superior Court, Law Division, (Essex County) by complaint filed August 22, 1952. The venue was changed to Morris County (the situs of the allegedly dam-

aged property of the plaintiff) by order of the Superior Court, Law Division, dated September 11, 1952. Following a lengthy trial a verdict was rendered by the jury in the present matter for the plaintiff in the amount of $40,000. The ensuing judgment entered February 14, 1953 was appealed by the defendant to the Superior Court, Appellate Division, and was affirmed on February 18, 1954. *Stanley Co. of America v. Hercules Powder Co.*, 29 *N. J. Super.* 545 (*App. Div.* 1954). We allowed certification on the defendant's petition. 15 *N. J.* 382 (1954).

In passing it is noted that the plaintiff's complaint contained a second count, premised upon the allegation that the defendant's operations at Kenvil constituted the maintenance of a nuisance. This count was dismissed with prejudice by the trial judge after the plaintiff had introduced its evidence as to liability, on the defendant's motion, upon the ground that the plaintiff as a matter of law had not made out a *prima facie* case of nuisance. *Rule* 3:41–2(*b*) as amended January 1, 1953, now *R. R.* 4:42–2(*b*). The plaintiff cross-appealed the dismissal to the Superior Court, Appellate Division, but prior to hearing there the cross-appeal was dismissed by stipulation, without costs to either party. The nuisance count, and dismissal thereof, therefore is not under review on the present appeal.

Also at the close of the plaintiff's introduction of evidence as to liability, *Rule* 3:41–2(*b*) as amended, *supra,* now *R. R.* 4:42–2(*b*), *supra,* the defendant moved for dismissal of the plaintiff's claim insofar as it was laid upon the theory of negligence, for lack of proof of negligence, and for asserted failure of the plaintiff to establish a causal relation between the alleged damage to the plaintiff's property and any act of the defendant. The trial court denied the defendant's motion to dismiss the negligence count of the complaint.

In the disposition of this type of case it is helpful as an introduction to draw a terse picture of undisputed facts. The Hercules Powder Plant at Kenvil (hereinafter called the Kenvil plant) occupied "in round figures" 8,000 acres of land principally located in Roxbury Township, Morris

County, New Jersey. It was located 4¼ to 4½ miles to the west of the Baker Theatre, which is on West Blackwell Street, in Dover. On June 21, 1948 the defendant was the owner of the Kenvil plant and was operating it, including the three buildings in which the detonation of explosive substance admittedly occurred. The three buildings were located 400 to 500 feet apart, one from another in a triangular arrangement. One structure contained 7,000 pounds of nitroglycerin, another 12,500 pounds thereof, and the third building 11,400 pounds of the same substance. The detonation of explosives occurred on a Monday. The alleged damage to the Baker Theatre was discovered by the porter of the theatre on the subsequent Friday morning, when he noticed plaster on the floor of the balcony and a crack in the ceiling. Inspection by a structural engineer on June 28 and 29, 1948, disclosed that two of four wooden trusses supporting the roof of the theatre were cracked. These were the two nearest the street. There were five trusses in all, one, being the truss nearest the street (*i. e.*, between the street and the two cracked trusses), was steel and had been substituted for a wooden truss in 1926 or 1927. The theatre had been erected "about 1905." Sound equipment was installed and the theatre redecorated in 1934. A structural engineer had inspected the building in 1941 and 1942 at which time the wooden trusses were found to be "basically in sound condition," although reinforcement of one of the trusses was recommended and effected. An examination of the theatre was also made in 1945 at which time a recommendation was made that some repairs to one of the trusses be effected to strengthen it, but the plaintiff's witness "did not think" this was done.

The Baker Theatre was closed for repairs from June 27, 1948 to July 10, 1948 and from June 6, 1949 to July 16, 1949. The repairs to the trusses in 1948 consisted of clamping the ends of the two cracked trusses and those in 1949 consisted of installation of steel girders to carry the whole roof load as well as the old wooden trusses. The old wooden trusses were not discarded.

The foregoing description of the circumstances does not include the details of the testimony on the basic elements of this negligence action but indicates the general nature of the occurrences which were subjected to trial. With this before us we proceed to the disposition of the appeal.

The questions involved on the appeal include whether the trial court erred (a) in admitting and later refusing to strike opinion testimony by a plaintiff's witness as to causal connection between the detonation of explosives at the Kenvil plant and the damage to the Baker Theatre; (b) in denial of the defendant's motion for judgment of dismissal at the close of the plaintiff's case as to liability, *R. R.* 4:42–2(*b*), and for judgment under *R. R.* 4:51 at the close of the plaintiff's entire case and at the close of the entire reception of evidence; (c) in precluding the defendant from inquiring into the reasons underlying its own expert's opinion as to causation; (d) in allowing proof of repairs to portions of the Baker Theatre as to which no proof of damage was introduced; (e) in allowing proof of damage to property of other persons not involved in this action; (f) in its rulings concerning the introduction of evidence relative to loss of profits; and (g) in failing to charge requests of the defendant relative to proximate cause and foreseeability for harm.

We are not called upon in the consideration of the questions involved in this appeal to apply the established test that negligence must be proved and will not be presumed. The trial court disposed of this facet of the case upon the theory of *res ipsa loquitur*, although observing that the plaintiff must, even under this theory, establish causal connection between the occurrence and the damage allegedly sustained as a result thereof. The defendant asserted on this appeal that "although defendant does not concede that the facts warranted the invocation of that doctrine, it desired not to make that a ground of appeal." We therefore do not consider on this appeal whether the defendant's motions for dismissal or for judgment at the close of the case should have been granted for failure of the plaintiff to prove negligence at the Kenvil plant of the defendant.

## I

The emphasis of the defendant's appeal insofar as causation is concerned is placed upon alleged trial errors in relation to expert opinion evidence on the issue of causal connection between the alleged damage and the admitted detonation of explosives. In this respect the plaintiff asserts that the error, or errors, if any existed, did not prejudice the substantial rights of the defendant because there was other proof of causation. We find to the contrary.

In the plaintiff's case as to liability, prior to the defendant's motion to dismiss made before the plaintiff proceeded to prove the cost of repairs, R. R. 4:42–2(b) *supra*, there was proof that there were 7,000 pounds of nitroglycerin in one of the defendant's buildings, 11,400 pounds in a second building and 12,500 pounds in a third building, and that these quantities of nitroglycerin exploded in a series of explosions; that on the day of this occurrence the Baker Theatre manager "heard an explosion" which, he testified, "threw me out of my chair"; that the Baker Theatre porter heard a "big blast" which, he testified "almost rocked me out of my chair"; that two housewives testified that they heard an explosion on that day and afterwards discovered cracks in the walls of their homes in Dover, each one several blocks from the Baker Theatre. There was testimony that a few days after the day of the occurrence fallen plaster was discovered in the Baker Theatre (the plaintiff admitted on this appeal that "no one knows exactly when the plaster fell"), and a crack in the ceiling was observed following which investigation of the building disclosed two damaged trusses. A structural engineer had testified that there was no evidence of dry rot, borers, fungus, or deterioration in the two damaged wooden trusses, that the cracks indicated they resulted from "a very large force or forces suddenly applied, and applied within a short period of time" and that they were "definitely recent cracks as of that date," namely, June 28 and 29, 1948. He testified that by "recent" he meant that it "was something that happened within a

matter of weeks or a month or some such period as that" and was "Oh, about a month." There was also testimony that the wooden trusses at the time of the occurrence were carrying a dead load of 30 pounds per square foot and could carry a total dead and live load up to 50 pounds per square foot but, beyond that, fracture would take place. There was testimony that wind, snow and air blast are all forms of "live" load. And one of plaintiff's experts testified that an additional instantaneous live load of ten pounds per square foot would be in excess of the strength the four wooden trusses could bear. This, of course, is not all the testimony, but shows the quality of proof. It was repeated in various forms by several witnesses for the plaintiff. Assuming the truth of these elements, there was no proof that there was generated by the detonation of explosive substance an air blast of sufficient proportions to effect an instantaneous live load of ten pounds per square foot upon the roof of the Baker Theatre unless resort was had to the testimony of a Dr. Bleich, an expert witness for the plaintiff. This was testimony to which the defendant addressed numerous objections at the trial, the overruling of which the defendant asserts was error.

Dr. Bleich appears to have been competent to testify as an expert in the field of effects of explosions on buildings, at least to the extent that acceptance of his educational and experiential qualifications in that respect constituted no abuse of discretion on the part of the trial judge. *In re Plainfield-Union Water Co.*, 14 *N. J.* 296, 307 (1954); *Carbone v. Warburton*, 11 *N. J.* 418, 424–425 (1953). The defendant has not questioned the rulings of the trial court in this connection.

The defendant, relying on *Guzzi v. Jersey Central Power & Light Co.*, 12 *N. J.* 251, 256, 257 (1953), contended on this appeal that Dr. Bleich's testimony itself was not "competent" because there was no proper foundation laid therefor. Dr. Bleich testified he had no knowledge of the prior condition of the Baker Theatre trusses and that he had made no computations as to how much live load the Baker

Theatre roof or trusses could carry. He testified that he had never seen the Baker Theatre. The *Guzzi* case, *supra*, held that

"* * * the eventual concession (of lack of knowledge) made by the witness would seem to be a disavowal of the requisite testimonial expert qualifications, or, at the very least, an unsureness that militates against the trustworthiness of his opinion."

Under the circumstances here obtaining the direct application of the *Guzzi* case, *supra*, which related to expert or experiential knowledge as opposed to specific knowledge of the physical structure involved in the inquiry, is not available to the defendant. However, the lack of proper foundation for the expert's specific testimony has been held to render a general inquiry of an expert as to structural characteristics of a building objectionable. *Spinelli v. Golda*, 6 *N. J.* 68, 79 (1950). *Cf. Schumann v. Horn & Hardart Baking Co.*, 8 *N. J. Super.* 153, 158–159 (*App. Div.* 1950).

The reason for the holding in the *Spinelli* and *Schumann* cases, *supra*, was tendered on the hypothesis of generality. In other words, absent description of the size, construction and condition of the element of the structure involved in the inquiry, the expert could render no opinion because he was not considering all the data, facts and circumstances pertinent to the inquiry being made. The opinions of experts must be based either upon facts within their own knowledge which they detail to the jury or upon hypothetical questions embracing facts supported by the evidence upon which the expert opinion is sought. *Beam v. Kent*, 3 *N. J.* 210, 215 (1949). Where the opinion is so completely lacking in proper foundation as to be worthless it is not admissible. *Rempfer v. Deerfield Packing Corp.*, 4 *N. J.* 135, 145 (1950). Expert opinion is valueless unless it is rested upon the facts which are admitted or are proved. *Bayonne v. Standard Oil Co.*, 81 *N. J. L.* 717, 722 (*E. & A.* 1910). In other words, a hypothetical question cannot be invoked to supply the substantial facts necessary to support the conclusion. 20 *Am. Jur., Evidence, sec.* 787, *p.* 661. See also *McKelvey*

*on Evidence (5th ed.* 1944), *sec.* 189, *p.* 352; *Jones on
Evidence (3rd ed.* 1924), *sec.* 371, *p.* 559; *Lodge, Evidence
in New Jersey Practice* (1952), *sec.* 684, *p.* 748; *Turner,
New Jersey Evidence* (1933), *pp.* 193, 198, 201. Professor
Wigmore observes that the hypothetical question "must not
include data which there is not a fair possibility of the jury
accepting," and that otherwise the question would be "mis-
leading, because the jury may often, ignoring the precise
data of an opinion, accept the opinion itself when in fact its
data are not accepted," 2 *Wigmore on Evidence (3rd ed.*
1940), *sec.* 682, *pp.* 805–806. In other words, "The jury
are apt, especially where there are many expert witnesses
and the evidence is voluminous, to remember and accept
merely the net opinion of a witness, with little or no refer-
ence to the special premises upon which it was based." *Ibid,
p.* 808. Where a question is "so indefinite as to admit of
no answer except as mere guesswork" it has been held
to be prejudicial error to overrule the objection thereto.
*Lindenthal v. Hatch,* 61 *N. J. L.* 29, 31 (*Sup. Ct.* 1897).
The principles above enunciated have been incorporated by
the National Conference of Commissioners on Uniform State
Laws in their draft of *Uniform Rules of Evidence* (1953),
*Rule* 56(2). The pertinent portion of this proposed *Rule*
56(2) states:

"If the witness is testifying as an expert, testimony of the witness
in the form of opinions or inferences is limited to such opinions
as the judge finds are (a) based on facts or data perceived by or
personally known or made known to the witness at the hearing.
\* \* \*"

Clearly this implies that the facts made known to the wit-
ness must be facts in evidence. Indeed, the *Uniform Rules
of Evidence, supra,* by *Rule* 57, provide for preliminary
examination of the witness concerning the data upon which
the opinion is founded. *Cf. American Law Institute, Model
Code of Evidence* (1942), *Rule* 401, *p.* 199 *et seq.*

Although, as hereinbefore indicated, there were witnesses
who testified to hearing "an" explosion, the only proof intro-

duced by the plaintiff as to the nature of the specific event alleged was the defendant's answer to interrogatories. This was that there were a series of explosions in the three nitroglycerin buildings hereinbefore mentioned. A hypothetical question addressed to Dr. Bleich, after numerous objections to prior attempts on the part of the plaintiff's counsel to frame the question, all objections being premised at least in part upon the fact that there was not a single explosion of some 28,000 pounds or more of nitroglycerin, elicited the opinion that "this force was sufficient to do damage to some structures and not to others." Subsequently, after further objections, Dr. Bleich was posed a hypothetical question which assumed an explosion of 30,000 pounds of nitroglycerin creating a single concussion or air blast, repeatedly referred to the detonation as an "explosion" in the singular sense, described the theatre building in general terms and assumed "that the force of the explosion was severe enough to probably cause structural damage at the distance separating" the Baker Theatre from the Kenvil plant. Dr. Bleich was asked in this question to state his opinion as to causal connection "between the explosion on the Defendant's premises of some 30,000 pounds of nitroglycerin and the damage to the roof structure of the Plaintiff's theatre." Over the defendant's objection that the hypothetical question involved factors that had not been introduced in evidence and failed to contain an essential proper foundation element, namely the type of construction and materials used in the roof structure of the theatre, Dr. Bleich was permitted to testify that in his opinion such a causal connection existed.

 We find for the foregoing reasons that this hypothetical question was objectionable under the principles expressed in the *Rempfer* case, *supra,* and the trial court erred in overruling the defendant's objections thereto.

██ It is urged by the plaintiff that this error was not prejudicial in view of testimony by other witnesses that a suddenly applied load caused the damage to the Baker Theatre and that a suddenly applied force of ten pounds per square foot would have caused this. Error in the admission or ex-

clusion of evidence constitutes no ground for disturbing a judgment "unless a denial of the relief sought appears to the court to be inconsistent with substantial justice." *R. R. 1:5–3(b)*. *Cf. National Conference of Commissioners on Uniform State Laws, Uniform Rules of Evidence* (1953), *Rule* 4; *American Law Institute, Model Code of Evidence* (1942), *Rule* 6(b). The plaintiff in this respect asserted on this appeal that there was testimony of Dr. Bleich that the air blast from the detonation of nitroglycerin at the Kenvil plant exerted a ten pound per square foot pressure on the theatre. Dr. Bleich testified on cross-examination that "an explosion of the indicated size" at the Kenvil plant $4\frac{1}{4}$ miles away would result in a peak pressure of ten pounds per square foot at the Baker Theatre in Dover. This testimony is inadequate, since under the testimony of Dr. Bleich it obviously relates to a single explosion rather than three separate explosions, to prove that a force of ten pounds per square foot was exerted on the Baker Theatre by the air blasts from the Kenvil explosions. Dr. Bleich's answer to the hypothetical question above discussed stands out as the only proof of causal connection, and therefore error in respect thereto was clearly prejudicial to the substantial rights of the defendant and there- inconsistent with substantial justice. *R. R. 1:5–3(b) supra.*

Consequently, the error with respect to Dr. Bleich's testimony infected the trial court's denial of the defendant's motion for judgment made at the close of the plaintiffs introduction of evidence on the issue of liability. In other words, taking all the admissible evidence as true, the plaintiff, without Dr. Bleich's testimony, failed to introduce proof of causal connnection between the detonation of nitroglycerin at Kenvil and the damage to its theatre building in Dover.

■■ The defendant also asserted that error existed in the trial court's failure to exclude the hypothetical question posed to Dr. Bleich, *ante,* because the question included another expert's opinion that the truss failure resulted from "a recent very large severe suddenly applied outside force or shock." Professor Wigmore states that "the basis for a hypothetical opinion

may be either data observed or data inferred, and that inferred data presented by expert testimony may equally well become part of the basis for a hypothetical question." 2 *Wigmore On Evidence* (*3rd ed.* 1940), *sec.* 682, *p.* 810. The general rule presently adhered to in this State and apparently elsewhere in the United States is that "a hypothetical question which includes the opinion of another is improper." *Hagerman v. Lewis Lumber Co.,* 24 *N. J. Super.* 120, 127 (*App. Div.* 1952), affirmed 13 *N. J.* 315, 318 (1953), 20 *Am. Jur., Evidence, sec.* 791, *p.* 665. However, in the *Hagerman* case, *supra,* it was observed that in a question to a recognized expert, inclusion of a particular opinion of another expert witness under some circumstances may be harmless. The same measure appears applicable here; the inclusion of the other expert's opinion in this case, even if it were error, standing alone, would not have been prejudicial. See also *Ten Eleven Corp. v. Brunner,* 135 *N. J. L.* 558, 560 (*Sup. Ct.* 1947); 20 *Am. Jur. Evidence, sec.* 787, *p.* 661; *sec.* 791, *p.* 665; Annotations 98 *A. L. R.* 1109, 82 *A. L. R.* 1489.

Further, it was contended by the plaintiff that evidence was introduced that the tower of a church located adjacent to the Baker Theatre was severely damaged by the Kenvil occurrence. The testimony adverted to entered the case during the examination of a witness for the defendant. There is in the testimony alluded to no proof of causal connection, but merely the fact that a crack in the church tower was not discovered until several days after the Kenvil incident. Since no other proof of causal connection existed, the error as to Dr. Bleich's testimony was therefore carried into the disposition by the trial court of the defendant's motion for judgment made at the close of the reception of all evidence in the case and its prejudicial nature was not alleviated.

## II

The defendant as well as the plaintiff introduced expert opinion testimony. The defendant contends that prejudicial error was committed by the trial court (a) in striking the

answers of one witness presented by the defendant made in response to questions posed to elicit his reasons for his opinion given in testimony, that there was no causal relation between the Kenvil plant explosions and the damage to the Baker Theatre roof trusses, and (b) in refusing to permit this expert to state reasons for his opinion that a suddenly applied force of ten pounds per square foot would not fracture the Baker Theatre trusses.

Where, as here, the testimony was offered in explanation of the factual analysis followed by the expert in reaching his opinion, it would have been helpful to the triers of the facts in evaluation of that opinion. The plaintiff's case depending upon the probabilities of damage to the specific structure by virtue of the specific explosions, there being no direct proof of causal connection, the strength of opinion testimony was vital. The circumstances called for the application of the principle that evidence may be introduced "* * * circumstantially in explanation of the process by which the witness arrived at his opinion. * * *" *Delaware, L. & W. R. Co. v. City of Hoboken*, 10 *N. J.* 418, 434 (1952). It has been said that, generally:

> "The party offering a witness may desire to make plain the strength of the witness' grounds of knowledge and the reasons for trusting his belief. This is a legitimate purpose. * * * the general rule is that the witness *may* on direct examination state the particular circumstances which legitimately affected his knowledge. * * *" 2 *Wigmore on Evidence* (3rd ed. 1940), *sec.* 655, *pp.* 759–760.

Specifically on the question here involved,

> "An expert witness, like any other witness, may be asked on the direct examination, or may be required, to state the *grounds of his opinion, i. e.* the general data which form the basis of his judgment upon the specific data observed by him. * * *" *Id., sec.* 562, *p.* 644.

*Cf. Leonard v. Standard Aero Corp. of New York*, 95 *N. J. L.* 235, 239 (*E. & A.* 1920); 20 *Am. Jur., Evidence, sec.* 787, *pp.* 661–662; *McKelvey on Evidence* (5th ed. 1944), *sec.* 189, *p.* 352; 32 *C. J. S., Evidence*, § 559, *p.* 368. To the

same effect is *National Conference of Commissioners on Uniform State Laws, Uniform Rules of Evidence* (1953), *Rule 57, supra.*

The Appellate Division determined this question involved on the premise that the trial court had appropriately ruled that the questions asked were not proper redirect examination. The interrogation of the witness at this stage of the trial was extensive. The trial court during this questioning had permitted the witness to answer hypothetical questions relating to causation and permitted the defendant's question, "Will you state why." The trial court then repeatedly struck the witness' answers on the plaintiff's objection that they were "not responsive." After the extended colloquy ensuing the plaintiff objected to the defendant's offer of further testimony on this witness' reasons for his opinion on the ground that this inquiry was beyond the scope of redirect examination.

█ Under all the circumstances of this case and the application of the foregoing principles we find that the trial court committed prejudicial error in barring inquiry by the defendant into its own expert witness' reasons for his opinions relative to the issue of causal connection between the Kenvil explosions and the damage sustained by the Baker Theatre trusses.

### III

█ Among the questions involved is the query whether the trial court erroneously refused to exclude proof of the structural reenforcement of two of the trusses in the Baker Theatre, and cost thereof. This question involved has reference to the fact that two of the four wooden trusses were not shown to have been damaged. The only testimony in the case to which the plaintiff adverted on this appeal in support of the trial court's rulings in this respect (and we have discerned no other pertinent testimony in our scrutiny of the evidence) was a structural engineer's testimony that "since it had gone through presumably the same conditions as the others, and since you had a terrifically dangerous con-

dition than (sic) these two (referring to the two visibly damaged trusses), it was reasonable to expect some damage to those trusses (referring to the two apparently sound wooden trusses)." (Emphasis and explanatory comment supplied.) It is difficult to ascertain even a scintilla of evidence of damage to the apparently sound trusses in this testimony. The defendant is not required to answer for the cost of structural reenforcement of any building or portion of building subjected to the effects of the explosions in its plant unless there is evidence of damage causally related to the explosions. A plaintiff's recovery of damages may not be based upon conjecture and speculation. *Dobrowolski v. Glowacki,* 136 *N. J. L.* 167, 171 (*E. & A.* 1947); *Layton v. Healy,* 12 *N. J. Super.* 459, 464 (*App. Div.* 1951). If repairs made were not necessary as a result of the defendant's negligence, or in other words made the property more valuable than it was before the injury, the full expenditure for repairs should not be at the expense of the defendant. *Hintz v. Roberts,* 98 *N. J. L.* 768, 770 (*E. & A.* 1923).

IV

A question involved in this case is whether proof of damage to other property in the vicinity is admissible. Such evidence was adverted to in the case of *Deubel v. Millard Construction Co.,* 80 *N. J. L.* 98, 99 (*Sup. Ct.* 1910) affirmed 82 *N. J. L.* 523 (*E. & A.* 1911), which is relied upon by the plaintiff. However, the testimony in the *Deubel* case, *supra,* constituted an admission by the defendant, in that a contractor employed by the defendant (and testifying as a defense witness) testified that damage to the plaintiff's houses and to other houses in the vicinity had occurred as a result of the defendant's nearby blasting operations and had been repaired at the defendant's direction.

There seems to be no pertinent reported decision in this State on this question. However, it has been held elsewhere that evidence of this character, *i. e.,* damage to other property, is admissible to show the pressure or force gen-

erated by the explosion and the distance it carried. *Whitman Hotel Corp. v. Elliott & Watrous Engineering Co.,* 137 *Conn.* 562, 79 *A. 2d* 591, 597 (*Sup. Ct. Err.* 1951). The Supreme Court of Errors of Connecticut held that such evidence "had a bearing on proving the causal connection," but did not detail the particularity of the proof. See also *Benson v. Weaver,* 250 *S W. 2d* 770 (*Tex. Civ. App.* 1952), affirmed *sub nom. Weaver v. Benson,* 254 *S. W. 2d* 95 (*Tex. Sup. Ct.* 1952); *Linforth v. San Francisco G. & E. Co.,* 156 *Cal.* 58, 103 *P.* 320 (*Sup. Ct.* 1909); *Louisville & N. R. Co. v. Lynne,* 199 *Ala.* 631, 75 *So.* 14 (*Sup. Ct.* 1917); *Harbison-Walker Refractories Co. v. Scott,* 185 *Ala.* 641, 64 *So.* 547 (*Sup Ct.* 1914); 35 *C. J. S., Explosives,* § 11, *pp.* 259–260; 25 *C. J., Explosives, par.* 43, *p.* 208. Although the evidence was held properly admitted in the *Benson* case, *supra,* the Texas Supreme Court observed that

"\* \* \* the fact of even an atomic blast plus the bare fact that the crack exists is not evidence that the latter is due to the former, since obviously cracks in walls occur more often than not for reasons other than blasts." (254 *S. W. 2d, at page* 97.)

Such evidence is to be received with extreme caution and only where a proper foundation is laid. Evidence of similar injuries or damage to other property without proof of cause thereof, is generally not admissible to prove the cause of a specific occurrence. 20 *Am. Jur., Evidence, sec.* 304, *p.* 283. However, where the facts present such points of similarity as to afford reasonable data for a conclusion, courts in some jurisdictions have held that evidence of this category is admissible on the issue of causation. 2 *Wigmore on Evidence* (3rd ed. 1940), *sec.* 442, *pp.* 424 *et seq.; Jones on Evidence* (3rd ed. 1924), *sec.* 164, *pp.* 215–216. Compare *Fitzsimons & Connell Co. v. Braun,* 199 *Ill.* 390, 65 *N. E.* 249, 249–250, 59 *L. R. A.* 421 (*Sup. Ct.* 1902).

The evidence of damage to other properties in the present case was conjectural as to causation. There was no proof offered that the air blast from the explosions caused the damage to the witnesses' homes. Further there was no showing that the essential conditions of the other structures were

similar to the conditions of the building involved herein. See also 32 *C. J. S., Evidence,* § 583, *p.* 438. *Cf. Spence v. Hutchinson,* 102 *N. J. L.* 131, 132 (*E. & A.* 1925).

This principle appears peculiarly apposite in the present case by virtue of Dr. Bleich's testimony, hereinbefore adverted to, that "This force was sufficient to do damage to some structures and not to others." However, standing alone the admission of this testimony, although it were erroneous, would not have been prejudicial. And the evidence, if it were properly connected to the issues by other testimony, would seem unobjectionable although its weight as proof of force or extent of the explosions might be slight.

*Manda v. City of Orange,* 82 *N. J. L.* 686, 688 (*E. & A.* 1912), also relied upon by the plaintiff, is not pertinent to this inquiry for it relates to proof of *value* and not to proof of *event,* and therefore requires preliminary proof of similarity of the damaged property to the evidential property.

## V

Among the questions involved in this case is the question whether the trial court abused its discretion in its exercise of control of the reception of evidence on the issue of loss of profits.

Loss of profits, where based on sound fact and not on mere opinion evidence without factual support, is recognized as a proper measure of damages if "capable of being estimated with a reasonable degree of certainty." *Rempfer v. Deerfield Packing Corp., supra* (4 *N. J.,* at *page* 144). *Cf. Louis Schlesinger Co. v. Rice,* 4 *N. J.* 169, 179 (1950). In tort cases, profits which are remote, speculative or uncertain are neither an element of damages nor evidence of damages. *Woschenko v. C. Schmidt & Sons,* 2 *N. J.* 269, 278–279 (1949).

The defendant's arguments on this question in general relate to the weight of the evidence in this respect. Under the circumstances of this case and our disposition of the appeal on other grounds, we pass those arguments.

 However, the defendant has questioned the exercise of discretion by the trial court in refusing to permit the defendant to develop by way of cross-examination of a plaintiff's witness the net profits of the Playhouse, another theatre in Dover owned and operated by the plaintiff. Inquiry into gross and net profits of the Baker Theatre was permitted. Inquiry into gross receipts of the Playhouse was permitted. When the defendant's counsel sought to elicit testimony concerning the net profits of the Playhouse the plaintiff's objection was sustained on the ground that other factors (management, cost of operation) rendered such evidence irrelevant. The defendant did not press its right to introduce this evidence on cross-examination and in fact stated, "I will be satisfied with the gross." It appears that under the circumstances there was no improper limitation of cross-examination.

## VI

Finally, the questions involved include whether the trial court erred in failing to instruct the jury in the manner requested by the defendant in requests Nos. 5, 12 and 13.

 Actionable negligence involves breach of duty and resulting damage. *Ochs v. Public Service Railway Co.*, 81 *N. J. L.* 661, 662 (*E. & A.* 1911); *Bigelow on Torts* (*8th ed.* 1907), *p.* 107; 38 *Am. Jur., Negligence, sec.* 27, *p.* 672; *Stevenson, Negligence Law in New Jersey* (1945), *p.* 1.

It is clear that this appeal deals generally with the principle that although a breach of duty may be demonstrated, it must be shown that there was a causal connection between that breach of duty and the plaintiff's alleged damages.

 There was a duty at common law for persons having control of dangerous materials to exercise care commensurate with the risk of danger consistent with the dangerous character of the material involved. *Carlo v. The Okonite-Callender Cable Co.*, 3 *N. J.* 253, 263 (1949). *Cf.* 22 *Am. Jur., Explosions and Explosives, sec.* 14, *pp.* 135–136. In this case the trial court's charge with respect to the duty of the defendant was not objected to by either party.

With respect to proximate cause the jury was instructed by the trial judge generally and as requested by the defendant in several respects. The defendant on this appeal questions the propriety of the trial court's failure also to charge requests 5, 12 and 13, all of which related to proximate cause. Insofar as these requests were proper they appear to have been adequately charged in the instructions to the jury both in the general charge and other requests of defendant. Additionally, request No. 13 was not consistent with the proven facts and was speculative.

We find no error in this respect.

Since this action must be returned for a trial *de novo* all of the alleged errors at the trial level have been met, especially in view of the fact that our objectives are not only for just determinations of the cases, simplicity in procedure, and fairness in administration, but also for an elimination of expense and delay. To aid the trial court in reaching that objective in subsequent disposition of the case is consonant therewith.

### Conclusion

For the reasons expressed in this opinion, the judgment of the Superior Court, Appellate Division, is reversed and the cause will be remanded for new trial.

*For reversal*—Chief Justice VANDERBILT and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—6.

*For affirmance*—None.