824 A.2d 166 (2003)
360 N.J. Super. 586
Jagdish R. DESAI, Plaintiff-Appellant-Cross-Respondent,
v.
BOARD OF ADJUSTMENT OF THE TOWN OF PHILLIPSBURG, Defendant-Respondent-Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 2003.
Decided April 22, 2003.
*168 William R. Edleston, Phillipsburg, argued the cause for appellant-cross-respondent.
Gregory G. Gianforcaro, Phillipsburg, argued the cause for defendant-cross-appellant.
Before Judges PETRELLA, LINTNER and BILDER.
*167 The opinion of the court was delivered by PETRELLA, P.J.A.D.
This matter returns to us after a remand of a prior appeal under docket number A-1144-99. The dispute arose out of the denial by the Board of Adjustment of the Town of Phillipsburg (Board) of the application by plaintiff Jagdish R. DeSai for a use variance for property located on Hudson Street in Phillipsburg. Plaintiff's application sought to expand the existing first floor commercial use and to convert the third floor into apartments.
Our earlier unreported opinion in this matter stated the salient facts which essentially were not in dispute, and we quote from that opinion:
... In September of 1994, plaintiff purchased a three-story brick building located at an intersection in the town of Phillipsburg. In March of 1993, the property's zoning designation was changed from "R-50(B)" and "R-75" to "R-50." "R-50(B)" included single family residential units, multi-family residential units and neighborhood-type business establishments. "R-75" allowed for single family residential units, parks, playgrounds, churches, and temples. "R-50" restricted the area to only single family residential units.
Approximately four to five years prior to plaintiff's purchase, the building contained a pizza parlor on the first floor, three two-bedroom apartments on the second floor, and a large meeting room on the third floor. At the time of plaintiff's purchase of the property, the pizza parlor had been closed for approximately three years. It was disputed that the second floor was continuously used as three apartments. However, it was unclear when the use of the third floor ceased. Plaintiff spent approximately $105,000 on renovations.
In February of 1995, plaintiff applied to the Board of Adjustment for a use variance to operate a convenience store on the first floor of the building as a preexisting non-conforming use, and to convert the third floor into two two-bedroom apartments. This application was denied. On April 13, 1995, plaintiff again appeared before the Board, this time requesting a use variance for a "beauty parlor/ice cream parlor" or a "pizza parlor/deli." This application was also denied.
Following this denial, plaintiff filed a complaint in the Law Division requesting the court to direct the Board to approve either of plaintiff's applications. One count of the complaint requested that the court declare that an inverse *169 condemnation occurred by way of defendant's actions. The court remanded the matter to the Board for further consideration of the issue of abandonment as to the first and third floors. On remand, the Board concluded that both floors had been abandoned as commercial uses and denied plaintiff's application.
Plaintiff returned to the Law Division which again remanded the case to the Board for consideration of appropriate uses for the first and third floors. The Board initially decided that plaintiff was permitted to occupy 1500 square feet of the first floor as a convenience store and to utilize the remaining 800 square feet as a small office or a small retail/commercial use. Plaintiff was also permitted to use the third floor for two two-bedroom apartments and to continue to operate the second floor as apartments. These terms were set forth in a settlement between the parties.
On March 11, 1999, the Board held a public hearing for testimony and public comment regarding the settlement. After strenuous objection by townspeople based on the lack of parking, the Board reversed its prior decision and refused to consider any other uses of the first and third floors.
Plaintiff again appealed the Board's decision. This time, the judge requested two appraisals from each party in anticipation of a ruling on inverse condemnation. The values in the appraisals ranged from $150,000 to $300,000. The court concluded that the actions of the Board amounted to inverse condemnation and ordered the Board to pay plaintiff $185,000 for the property. Although the court found that the Board had not acted improperly during the pendency of the matter, the judge awarded plaintiff $20,000 in delay damages, or $2,000 a month for ten months rent.
In our earlier opinion we said that the trial judge correctly concluded that inverse condemnation had occurred and that plaintiff was entitled to just compensation for his property. However, because of inadequate basis for appellate review we remanded the matter to the trial court for a hearing on the value of the property and more specific findings on delay damages. At a September 10, 2001 plenary hearing the judge heard testimony from both parties' experts and plaintiff.
On November 13, 2001, the judge issued a letter opinion which reaffirmed his prior determination of $185,000 as the value of the subject property and awarded delay damages of $2,000 per month from March 11, 1999. The judge afforded the Board the opportunity to avoid payment under inverse condemnation if it would permit re-zoning of the property to allow plaintiff the benefit of the uses of the first and third floors of the property. The judge gave the Board the option to either purchase the premises for $185,000 or in the alternative, to permit plaintiff to use the premises in the manner in which he had requested on March 11, 1999. Regardless of which option the Town chose, plaintiff was entitled to delay damages. The judge noted that it was "appropriate to assess delay damages as of March 11, 1999, since that was the date when the Court [found] the Board of Adjustment was arbitrary, capricious, unreasonable and unlawful in depriving plaintiff of the use of the first and third floors of his building." The only testimony presented to the Court regarding delay damages was that of plaintiff.
On January 8, 2002, the judge issued a letter opinion supplementing and clarifying his letter opinion of November 13, 2001. He also entered an order granting judgment for plaintiff and declaring that delay damages would cease February 28, *170 2002, the date plaintiff was able to utilize the entire premises. In his supplemental opinion, the judge clarified that his reference to re-zoning could be "accomplished by amendment to the Land Use Ordinance of the Town of Phillipsburg by the Town Council following appropriate procedures set forth in the Municipal Land Use Law." The judge again explained that on numerous occasions he had remanded the matter to the Board, and based on its inaction and failure to allow any uses on the first and third floors, he found the Board's actions to be "arbitrary, capricious, unreasonable and unlawful" and granted plaintiff's requested relief in the second count of his complaint. As noted, this ruling allowed the Town the option to purchase the property or allow the use variance requested by plaintiff on March 11, 1999.
The Board's motion for reconsideration and clarification and plaintiff's cross-motion for reconsideration were denied. Prior to these motions being heard, on February 18, 2002, the Town and the Board permitted plaintiff to use the first floor of the premises for a convenience store, the remaining 800 feet as a small office and the third floor for two two-bedroom apartments. In addition, the Town authorized the payment of delay damages.
Plaintiff appealed from the entry of the April 8, 2002 order in which the trial court, upon a motion for reconsideration, affirmed its January 8, 2002 order, and the Board cross-appealed.

I.
Plaintiff argues that by issuing a supplemental opinion on remand, the trial judge impermissibly deviated from our determination that he was entitled to just compensation for his property by fashioning an alternative to the defendant's obligation to pay the condemnation award. He argues that the only issues before the court were valuation and delay damages, and thus, it was error to allow an alternative to the Town's obligation to purchase his property.
As noted, we previously stated that the judge correctly concluded that inverse condemnation had occurred and that plaintiff was entitled to just compensation. However, in proposing an alternative remedy to condemnation, the judge fashioned an acceptable remedy which obviated condemnation. We do not conclude this was an effort to circumvent our previous decision. The judge, in suggesting an alternative to purchasing the premises, reasoned that the potential burden on the taxpayers of the Town would be lessened. The judge stated:
The plaintiff, in the first count of the complaint, requested a reversal of the denials of use variance applications on February 9, 1995 and April 3, 1995 and subsequently a reversal of the denial of an alternative use variance request by the Board on March 11, 1999. Since the Court found that the actions by the Board on February 9, 1995 and April 13, 1995 were not arbitrary, capricious and unreasonable, but did find the action of the Board on March 11, 1999 to be arbitrary and capricious, this Court, in its Opinion of November 13, 2001, reversed the action of the defendant, Board of Adjustment of March 11, 1999 and granted the use variance denied by the Board on that date.
The judge also observed that the Board continually failed to respond to the court's remands and failed to allow any uses on the first and third floors, which was "arbitrary, capricious, unreasonable and unlawful." In crafting this alternative, the judge fashioned a permissible remedy.
In effect, the Board was given a choice to re-zone the property or pay just compensation *171 to plaintiff. Under either alternative, the municipality was still required to pay plaintiff the appropriate amount of delay damages. On February 15, 2002, the Town exercised this alternative. In lieu of purchasing the premises from plaintiff, the Board granted his request regarding the use of the premises. The Town also authorized the payment of delay damages in the amount ordered by the court.
Although plaintiff now prefers that the municipality condemn his property, take title to it, and pay its market value which he asserts is higher than the $155,000 suggested by the municipality's experts,[1] that was not the only remedy available. "Generally speaking, condemnation should be ordered only where eventual acquisition appears inevitable ... or where equitable considerations mandate that remedy." Washington Market Enterprises v. Trenton, 68 N.J. 107, 123, 343 A.2d 408 (1975). Under the circumstances, we are satisfied that the judge did not mistakenly exercise his discretion, and determined an appropriate remedy.

II.

A.
On its cross-appeal, the Board argues that the judge erred in awarding delay damages at all because: (1) the delay was not caused by it, but by the legal system in litigating the claim; and (2) no damages for lost rent can be substantiated. We might consider the issue moot since the Town has already approved payment of delay damages. Because we were advised that they have not been paid due to the pendency of the appeal we decide the issue on the merits.
In our opinion remanding this matter, we noted that "[d]elay damages are generally awarded where there is evidence of an unreasonable delay fairly attributable to the governmental authority responsible for the granting of the permission requested." DeSai v. Board of Adjustment of the Town of Phillipsburg, A-1144-99T3 (June 27, 2001). We also commented that "`normal or at least not unreasonable delays in the land-use permit and approval process as well as extraordinary delays not attributable to government' are not sufficient grounds for such damages." Id. at 6 (quoting Griffith v. State of New Jersey Dep't. of Envtl. Prot., 340 N.J.Super. 596, 607, 775 A.2d 54 (App.Div.), certif. denied, 170 N.J. 85, 784 A.2d 718 (2001), cert. denied, 534 U.S. 1161, 122 S.Ct. 1171, 152 L.Ed.2d 115 (2002). (citations omitted)).
In deciding the earlier appeal we observed that the trial judge had indicated that he did not consider the Board's actions to be improper. This appeared inconsistent with an award of damages, and prompted the remand. Upon remand, the judge conducted a plenary hearing and found the Board's actions to be improper as of March 11, 1999. Previously, the trial judge had remanded the matter twice to the Board and made it clear that they were "not playing fair." The judge's findings that the Board's actions on March 11, 1999 were "arbitrary, capricious, unreasonable and unlawful" are sufficient to support the grant of delay damages because such denial can be considered an "unreasonable delay fairly attributable" to the Board.

B.
Plaintiff nonetheless contends that the judge gave insufficient delay damages because: (1) the calculation of the duration *172 of the delay was too short; (2) the calculation of the monthly rental income was too low; and (3) he is entitled to lost profits. In its cross-appeal, the Board contends that, assuming the delay damages award was warranted, they were excessive.
Plaintiff's position is that the delay damages should be based on gross income. The Board maintains that delay damages should be based on the net income that plaintiff would have received from the rental properties. Specifically, the Board submits that delay damages should be no more than $934.10 per month.
In its brief, the Board includes a calculation of delay damages demonstrating the method in which this figure was reached. Plaintiff's expert's report[2] indicated that the three apartments on the second floor would yield $500 per unit, per month, totaling $18,000 per year. The Board contends that it should receive a credit based upon the "average yearly net income" plaintiff received from renting two second floor apartments which should be subtracted from plaintiff's yearly gross income. The basic assumption underlying the Board's calculation is that the amount of rent received by the plaintiff from the second floor apartments during the delay period, $18,000, should be credited to the amount it would owe plaintiff in delay damages. The Board's reasoning is flawed because, although it is undisputed that the second floor was continuously used as three apartments, it fails to take into account that it continually denied plaintiff's variance to convert the third floor to two apartments. Thus, the Board's delay damages formula would not compensate plaintiff for the lost rental income for the first and third floors of the building.
The judge calculated delay damages based upon the only testimony presented at the hearing, that of plaintiff who said he was losing rental of $2,000 a month. The delay damage award is supported by the record and was a sound exercise of judicial discretion. Accordingly, it is affirmed. Coastal Group, Inc. v. Dryvit Sys., Inc., 274 N.J.Super. 171, 181-182, 643 A.2d 649 (App.Div.1994); Pressler, Current N.J. Court Rules, comment 9 on R. 4:42-11 (2003).
In support of his contention that he is entitled to lost profits plaintiff contends that based upon a similar store he operates he would have been able to make additional monies in the amount of $45,000 net income per year, or $3,750 per month, for his activities as an owner of the convenience store.
Lost profits may be recoverable if they can be established with a "reasonable degree of certainty." Stanley Co. of Am. v. Hercules Powder Co., 16 N.J. 295, 314, 108 A.2d 616 (1954). Anticipated profits that are too remote, uncertain, or speculative are not recoverable. Ibid. See also V.A.L. Floors. Inc. v. Westminster Communities, Inc., 355 N.J.Super. 416, 426, 810 A.2d 625 (App.Div.2002). If the evidence affords a basis for estimating the damages with some reasonable degree of certainty it is sufficient. Tessmar v. Grosner, 23 N.J. 193, 203, 128 A.2d 467 (1957) (citing Wolcott v. Mount, 36 N.J.L. 262, 272 (Sup.Ct.1873), aff'd, 38 N.J.L. 496 (E. & A. 1875)). "The rule relating to the uncertainty of damages applies to the uncertainty as to the fact of damage and not as to its amount, and where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery." Ibid. (citations omitted). However, "when a property owner has been deprived of the use and enjoyment of his property, the courts have not *173 measured damages in the form of lost profits." 214 Corp. v. Casino Reinvestment Dev. Auth., 280 N.J.Super. 624, 633, 656 A.2d 70 (Law Div.1994) (citing State Comm'n of Transp. v. Cooper Alloy Corp., 136 N.J.Super. 560, 568, 347 A.2d 365 (App.Div.1975)). Indeed, "[a]uthority from the taking cases seems to indicate that, when land is taken without compensation, future profits from the use of the land may not be compensable." Burlington Assembly of God Church v. Zoning Bd. Of Adjustment, Township of Florence, 247 N.J.Super. 285, 290, 588 A.2d 1297 (Law Div.1990) (citations omitted).
Here, plaintiff's lost profits were not based upon sound fact, but were based on the mere opinion of plaintiff without any factual support. Moreover, this type of relief is not generally compensable in an inverse condemnation case. The trial judge properly rejected plaintiff's claim for lost profits.
Plaintiff also asserts that the commencement date for the calculation of delay damages should have been February 1995, which is the month when plaintiff's initial application was denied. The Board argues that the cut-off date for delay damages was approximately February 14, 2002 because that is the effective date plaintiff was permitted to utilize the premises and no longer suffered delay damages.
The time in which valuation of the property should be made must comport with the facts and circumstances of the case, so as to assure the property owner just compensation, as contemplated by the Constitution. City of Ocean City v. Maffucci, 326 N.J.Super. 1, 740 A.2d 630 (App. Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999). Just compensation is determined as of the earliest of the following dates: (1) when possession of the property being condemned is taken by the condemnor in whole or in part; (2) the date of the commencement of the action; or (3) when action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee. N.J.S.A. 20:3-30. However, arbitrary application of this statute governing the valuation date as of the date that the condemnation action was filed, is not required where it would result in unjust compensation to the property owner. Ocean City, supra (326 N.J.Super. 1, 740 A.2d 630).
In his January 8, 2002 ruling, the judge said that the Board's denials of the requested variances in 1995, were not arbitrary, capricious and unreasonable; however, he found that the Board's actions on March 11, 1999, were arbitrary, capricious and unreasonable. Indeed, we previously accepted the judge's ruling that inverse condemnation effectively occurred on that date. Hence, the trial judge properly calculated delay damages from that date.
Likewise, because plaintiff's use and enjoyment of the property was no longer affected as of February 28, 2002, that is the proper ending date for delay damages. On February 15, 2002, plaintiff received a letter stating that he was permitted to utilize the premises in the fashion he originally sought on March 11, 1999. Plaintiff's use and enjoyment of the property was no longer substantially affected.
We are satisfied that the judge's findings were based on sufficient credible evidence in the record, and we have no warrant to disturb them. Township of West Windsor in the County of Mercer v. Nierenberg, 150 N.J. 111, 695 A.2d 1344 (1997). The record supports the judge's award of delay damages.

III.
Although plaintiff concedes that counsel fees and costs are not normally awarded, he argues that unusual circumstances warrant them here.
"New Jersey has a strong policy disfavoring shifting of attorneys' fees." *174 North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569, 730 A.2d 843 (1999). That public policy is premised upon a determination that "sound judicial administration will best be advanced by having each litigant bear his own counsel fee except in those few situations specifically designated" in the rule. Pressler, Current N.J. Court Rules, comment 1 on R. 4:42-9 (2003) (quoting Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 225 A.2d 328 (1966)). Where such fees are authorized the decision to award or deny attorney's fees rests within the sound discretion of the trial court. Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995). Judges have broad discretion in determining when, whether, and under what circumstances attorneys' fees should be awarded, Enright v. Lubow, 215 N.J.Super. 306, 313-314, 521 A.2d 1300 (App.Div.), certif. denied, 108 N.J. 193, 528 A.2d 19 (1987), and such decisions are reviewed under the abuse of discretion standard. Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 443-444, 771 A.2d 1194 (2001).
In the present matter, there is no support for plaintiff's contention that he is entitled to counsel fees and there has been no showing of an abuse of discretion. The denial of counsel fees is affirmed.

IV.
Because the trial court did not err in granting defendant the alternative relief to grant the use variance to plaintiff, and because the Board permitted plaintiff's requested use of the premises, we need not address defendant's contention on its cross-appeal that the judge improperly calculated the value of the property at $185,000.
Affirmed.
NOTES
[1] We are aware that the Board is the only defendant, and the municipality is not a party. However, no issue has been raised as to the parties and we do not address it.
[2] For the purpose of calculations, the Board relied solely upon plaintiff's expert report with Cash Flow Analysis.