**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0015-17T2

PROFESSIONAL STONE,
STUCCO & SIDING
APPLICATORS, INC.,

     Plaintiff-Respondent,

v.

JMOC BUILDERS, INC.,

     Defendant-Appellant.

_____

          Argued October 23, 2018 – Decided January 28, 2019

          Before Judges Yannotti and Rothstadt.

          On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2989-15.

          Brian D. Schwartz argued the cause for appellant (Craner, Satkin, Scheer, Schwartz & Hanna, PC, attorneys; Brian D. Schwartz, on the briefs).

          Riley E. Horton, Jr., argued the cause for respondent.

PER CURIAM

Defendant JMOC Builders, Inc. appeals from the Law Division's July 21, 2017 judgment in the amount of $50,832.17 it entered in favor of defendant's subcontractor, plaintiff, Professional Stone, Stucco & Siding Applicators, Inc. Following a bench trial, the trial court concluded that defendant breached its agreement with plaintiff. The court awarded damages based solely upon the unpaid balance due under the parties' agreement, and added prejudgment interest and attorney's fees.

On appeal, defendant contends that it was error for the court to simply rely upon the balance of the contract amount that was not paid without any calculation of plaintiff's lost profits. Because plaintiff did not prove its lost profits, defendant argues the court should not have entered judgment and instead it should have dismissed the complaint. We agree. We reverse the trial court's judgment because we conclude there was no evidence in the record for the trial court to rely upon to award damages to plaintiff.

The facts as found by the trial court are summarized as follows. Plaintiff is a company that performs stone, stucco, brick, and siding work on new construction for contractors and builders. Defendant provides maintenance and construction services and was the construction manager on a project at an apartment building in Morristown owned by defendant's principal. The parties

2

entered into two contracts in May 2014 that called for plaintiff to first install a weather-resistant membrane to the exterior of defendant's building for a price of $13,975.00, and then, under the second contract, to provide materials and labor for the application of exterior stucco to the building for a price of $78,525.00. Defendant was to pay for the stucco work by making two $30,000 payments when thirty percent and sixty percent of the work was completed, with the remaining $18,525.00 to be paid at completion.

The stucco agreement addressed plaintiff's damages in the event that defendant did not allow plaintiff to commence or "continue performance" under the agreement. If defendant interfered with plaintiff's performance, plaintiff would be entitled to recover "as a measure of damages . . . an appropriate portion of the profit [plaintiff] would have earned under th[e] agreement, plus the reasonable [value] of the labor and materials that were furnished."[1]

Just prior to plaintiff commencing performance of the contract, the parties also entered into a subcontractor agreement on August 25, 2014. The subcontractor agreement stated that it could be terminated by defendant's written

---

[1] It also stated that if defendant defaulted, plaintiff would be immediately entitled to payment of the "outstanding unpaid balance," a late charge of "1 1/2% per month," and the "owner [would be] responsible for all costs and fees including attorney's fees incurred in [the] collection of [the] outstanding balance."

notice in the event of an uncured breach, or upon thirty days' written notice by plaintiff in the event of untimely payment. Additionally, either party could terminate the agreement if the other materially breached any other provision and failed to cure the breach within thirty days of receiving notice from the non-breaching party.

Plaintiff fully performed the contract for the installation of the weather membrane in May 2014 and was paid in full in June 2014. Plaintiff then subcontracted the labor portion of the stucco contract to a sub-subcontractor, Duo Construction, LLM (Duo) for $55,580.00. Duo began work on the stucco sub-subcontract in August 2014 and ceased work in November 2014. According to Duo's principal, when Duo had completed approximately eighty percent of the stucco project, it was forced to stop because the remainder of the building was not complete, and thus not ready for stucco application. Defendant's principal confirmed that when Duo stopped working, excavation work prevented stucco from being applied to parts of the building. Although Duo still had twenty percent of the work to complete, plaintiff had paid Duo all but approximately $3,500 of its contract price.

Prior to Duo not being able to complete its work, defendant had already paid plaintiff the first $30,000 installment as well as $20,000 towards the second

payment due under the contract. It also issued another payment of $10,000 but, in December 2014, defendant stopped payment on that check because it found leaks in the building that it previously directed plaintiff to cure, and which prevented the building from being "water tight."

Defendant initially raised issues about the leaks in an August 12, 2014 email to plaintiff asking it to "do something about getting the upper portion water tight." On December 2, 2014, plaintiff emailed defendant informing it that the work was complete and requesting a final payment of $28,525.00. Defendant disagreed with that assessment and in a responding email described the work as "far from complete." Shortly after that email exchange, defendant stopped payment on the $10,000 check because the building was "taking in water" and experiencing other issues, and defendant was dissatisfied with plaintiff's "overall lack of attention" to the project, which was causing leaks to occur throughout the building. Defendant emailed plaintiff on December 10, 2014, demanding that plaintiff "remedy th[e] situation immediately."

After discussions between the parties, it was determined that it was necessary for the building to be caulked in order for it to be waterproof. However, according to plaintiff, the leaks were not its fault, but due to the roof

being unfinished. Nevertheless, plaintiff immediately installed a "caulking membrane" to remedy the issue.

Despite plaintiff's actions, in mid- to late December 2014, defendant decided to hire a different company to complete the remaining stucco work. In June 2015, it hired Darco Construction Corp. (Darco) to complete the unfinished work for a total cost of $25,400.00. According to plaintiff, after December 2014, it did not receive any communication from defendant regarding returning to the site to finish the work, or any written communication that plaintiff was terminated or that its services were no longer required. It was plaintiff's understanding that defendant would contact it when it was ready for plaintiff to complete the stucco work. According to defendant, it believed that stopping payment on the $10,000 check in December 2014 and the parties' subsequent communications were "a form of [notice of] termination."

Based on its belief that it would be completing the work on the project, on August 21, 2015, plaintiff sent an email to defendant, stating that it was "looking forward to completing [its] scope and collecting [its] final payment." In response to that email, on August 27, 2015, defendant informed plaintiff that it had hired Darco to caulk due to plaintiff's "history of delays and poor workmanship" as well as Duo's "inferior work." Plaintiff replied that it "had no

6

idea and was given no notice of any issues" and that "[a]ny concerns [defendant] had were addressed expeditiously." According to plaintiff, because it had "never heard anything," defendant's email was a surprise.

Plaintiff filed a complaint against defendant alleging breach of contract and unjust enrichment and sought $28,525.00 in damages, plus interest and attorney's fees. Defendant filed an answer denying plaintiff's allegations; counterclaimed for breach of contract, violation of the implied covenant of good faith and fair dealing, fraud and deception, and unjust enrichment; and sought compensatory and punitive damages.

The court conducted a bench trial over three days in 2017. At trial, there was no evidence adduced regarding plaintiff's lost profits. Plaintiff's principal testified that it paid all but $3,156.84 of the amount owed to Duo. He also confirmed that plaintiff was working on numerous other jobs while under contract with defendant, used workers from defendant's project at other work sites, and similarly used materials that were dedicated for defendant's project at other locations. One of plaintiff's administrative assistants testified as to the invoices that were sent to defendant, the payments plaintiff received, and the amount of interest she calculated that was due and owing from defendant.

After considering the evidence, the trial court issued its final judgment, supported by a written decision setting forth its findings and legal conclusions. In its decision, the trial court found that defendant wrongfully terminated the contract without proper notice or affording plaintiff an opportunity to cure. According to the court, any breach by plaintiff as alleged by defendant was not a material breach, and plaintiff should have been given the opportunity to cure before being terminated from the project. The trial court held that defendant's actions in not paying the contract balance and not permitting plaintiff to finish the stucco application without any valid explanation as required under the contract constituted a breach of contract, especially in light of the fact that plaintiff acted in good faith and agreed to caulk the relevant areas at no extra cost.

Turning to plaintiff's damages, the trial court highlighted the fact that defendant's architect determined that 63.22% of the stucco application work had been completed, therefore, under the contract, plaintiff was entitled to $60,000 and defendant would be "unjustly enrich[ed]" if permitted to retain the $10,000 check it had cancelled. The court also determined that plaintiff would have received the entire amount due under the stucco contract had it been permitted to complete the work. Relying on the amount unpaid under contract, the trial

8

court entered judgment against plaintiff for damages in the amount of $28,252.00.[2] The court also imposed 1.5% interest in the amount of $10,657.36, attorneys' fees of $11,672.81, and court costs. This appeal followed.

In an appeal from a bench trial, "[t]he scope of appellate review of a trial court's fact-finding function is limited." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411 (1998)). "We uphold the trial court's factual findings in a non-jury trial 'if they are based on credible evidence in the record. . . . To the extent that the trial court interprets the law and the legal consequences that flow from established facts, we review its conclusions de novo.'" RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (quoting Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 329 (2017)).

On appeal, defendant does not challenge the trial court's determination that it breached its contract with plaintiff. Its challenge is limited to whether there was sufficient evidence to support an award of damages. Defendant argues that the trial court incorrectly relied on the gross revenue plaintiff would have received under the contract as the basis for its award without deducting from

---

[2] The remaining balance on the contract was $28,525.00. The trial court's award appears to have been a typo or miscalculation.

that amount the related costs that plaintiff did not incur by not having to perform. We agree.

In order to prevail on a breach of contract claim, a plaintiff must prove, among other elements, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff." Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (quoting Model Jury Charges (Civil), 4.10A, "The Contract Claim—Generally" (approved May 1998)). "[W]here the plaintiff is a . . . contractor who has been prevented by the defendant from completing his contract, the plaintiff is entitled to the profit that would have been realized if performance had been completed." V.A.L. Floors, Inc. v. Westminster Cmtys., Inc., 355 N.J. Super. 416, 422 (App. Div. 2002).

We do not require specificity or exactness in calculating lost profits. Lost profits are a measure of compensatory damages that may be recoverable if capable of being established to a "reasonable degree of certainty." Desai v. Bd. of Adjustment, 360 N.J. Super. 586, 595 (App. Div. 2003) (citing Stanley Co. of Am. v. Hercules Powder Co., 16 N.J. 295, 314 (1954)). "Anticipated profits that are too remote, uncertain, or speculative are not recoverable." Ibid. That a plaintiff may not be able to fix its lost profits with precision will not preclude recovery of damages, but courts require a "reasonably accurate and fair basis for

the computation of alleged lost profits." V.A.L. Floors, Inc., 355 N.J. Super. at 424. "Profits lost by reason of breach of contract may be recovered 'if there are any criteria by which probable profits can be estimated with reasonable certainty.'" Id. at 425 (quoting Feldman v. Jacob Branfman & Son, Inc., 111 N.J.L. 37, 42 (E & A 1933)). For example, a plaintiff's historical profit margin in business, rather than exact dollar amounts attributable to the specific contract, can provide a suitable basis to calculate lost profits. See id. at 425-26.

Here, the trial court found that the contract amount was the correct basis for determining the gross amount plaintiff would be entitled to under the contract. The court omitted, however, the second step: calculating "the difference between the contract price and the cost of performance or production." Id. at 422 (quoting J.L. Davis & Assocs. v. Heidler, 263 N.J. Super. 264, 276 (App. Div. 1993)); see also Cromartie v. Carteret Sav. & Loan, 277 N.J. Super. 88, 103 (App. Div. 1994). "Proof of the relevant costs or expenses is not a matter of mitigation. It is part of the damage case of the party seeking recovery for lost profits." Cromartie, 277 N.J. Super. at 103.

Even if the trial court attempted to complete the correct calculation, it could not do so as there was no evidence of lost profits whatsoever. Without such evidence, plaintiff failed to meet its burden of proof as to a necessary

11

element of its claim.  Under these circumstances, we are constrained to reverse the trial court's determination.

Reversed and remanded for entry of an order vacating the judgment and dismissing the complaint with prejudice.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0015-17T2