876 A.2d 885 (2005)
379 N.J. Super. 63
Marsha SINGER, Plaintiff-Appellant,
v.
BEACH TRADING CO., INC. and Eli Hizami a/k/a Eli Hizbo, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 2005.
Decided July 19, 2005.
*887 Mitchell B. Seidman argued the cause for appellant (Seidman & Associates, attorneys; Mr. Siedman, of counsel and on the brief; Reena Forst, Englewood Cliffs, on the brief).
Richard M. Howard, Jericho, NY, argued the cause for respondents (Kaufman, Schneider & Bianco, attorneys; Mr. Howard, of counsel and on the brief; Cara A. McCaffrey, on the brief).
*888 Before Judges KESTIN, FUENTES and EICHEN.[1]
The opinion of the court was delivered by
FUENTES, J.A.D.
In this appeal, we are required to consider whether an employer can be held liable for the tort of negligent misrepresentation in providing employment references.
We hold that an employer can be held liable for the negligent misrepresentation of a former employee's work history if: (1) the inquiring party clearly identifies the nature of the inquiry; (2) the employer voluntarily decides to respond to the inquiry, and thereafter unreasonably provides false or inaccurate information; (3) the person providing the inaccurate information is acting within the scope of his/her employment; (4) the recipient of the incorrect information relies on its accuracy to support an adverse employment action against the plaintiff; and (5) plaintiff suffers quantifiable damages proximately caused by the negligent misrepresentation.
Plaintiff, Marsha Singer, appeals from the order of the Law Division dismissing her complaint against her former employer, Beach Trading Company, Inc. (Beach Trading) and Eli Hizami, the customer service supervisor for Beach Trading. Plaintiff left Beach Trading to work for HRK Industries, Inc. (HRK). She was terminated from her position at HRK after Hizami, in response to an intentionally misleading telephone inquiry, erroneously told Henry Kasindorf, owner of HRK, that plaintiff was a customer service representative at Beach Trading, and not the Vice President of Daily Operations or a customer service supervisor.
The complaint alleged defamation, tortious interference and negligent misrepresentation. In granting summary judgment in favor of defendants, the motion judge did not apply the appropriate standard of review. Notwithstanding this legal error, we are satisfied that plaintiff's claims based on tortious interference and defamation cannot stand.
In his ruling dismissing her case, the motion judge did not mention or otherwise refer to plaintiff's claim for negligent misrepresentation. After conducting our own independent review of this issue, we are compelled to reverse and remand for further consideration by the trial court of the claim based on negligent misrepresentation.

I
Plaintiff began her employment at Beach Trading, a/k/a Beach Camera, on July 1, 2001, in an unspecified management position. Beach Trading is a family operation, owned by Raymond Mosseri, with Albert Mosseri as vice president, and Solomon Mosseri as secretary-treasurer. On July 20, 2001, Albert Mosseri sent a company-wide e-mail introducing plaintiff as the Vice President of Daily Operations.
At an unspecified time, Albert Mosseri asked plaintiff to oversee the customer service department temporarily during the Christmas season. It is undisputed that her title and salary were not changed as a result of this assignment. When Hizami began working at Beach Trading in October 2001 as a customer service representative, plaintiff was working in the customer service department at a desk similar to the other customer service representatives. She continued working in that department until she left the company in June 2002.
*889 On or about April 2002, plaintiff began looking for a new position outside Beach Trading. She responded to an employment posting for a customer service representative at HRK. Kasindorf offered plaintiff the position of customer service manager because, based on the professional experiences she listed on her resume, he believed she "might be overqualified" for the position of customer service representative.
By letter dated June 11, 2002, Kasindorf confirmed plaintiff's acceptance of the customer service manager position, commencing on June 17, 2002. This letter also indicated that plaintiff was entitled to a sixty-day severance package if she was terminated within the first year of employment.
There is a conflict in the record as to plaintiff's performance at HRK. Plaintiff claims that Kasindorf had told her he was "very pleased" with her work as manager, and he "felt that everyone was doing a better job." Kasindorf, on the other hand, has indicated that he was dissatisfied with plaintiff's performance as a manager, and claims that he advised plaintiff of his concerns.
Memoranda written by Kasindorf document incidents where plaintiff allegedly used poor judgment in resolving employee related conflicts. According to Kasindorf, as his dissatisfaction with her management skills grew, he began to question the "validity" of the representations plaintiff made in her resume. Finally, in an effort to allay his concerns, Kasindorf decided to contact the customer service department of Beach Trading in order to verify the accuracy of plaintiff's professional experiences.
Instead of forthrightly requesting that Beach Trading confirm or deny the employment history plaintiff had listed in her resume, Kasindorf decided to engage in a needless subterfuge, misrepresenting both his identity and the true nature of his call. Kasindorf's memorandum dated June 26, 2003, reveals his version of what transpired:
I spoke with several of the representatives in Beach Camera's Customer Service dept. and asked each of them if [plaintiff] was available to speak with me. They each replied that she was no longer with the firm. I then proceeded to ask what [plaintiff's] role at the company was and each of them told me that she was a Customer Service Representative. . . . I then asked to speak with the supervisor and was directed to Mr. Elie Hizbo. I questioned Elie Hizbo several times about [plaintiff's] role in the company and he clearly stated that he was the supervisor of the customer service department and she was never the supervisor of the department or a V.P. in the company and was just a Customer Service Representative. I then asked Elie Hizbo who the Customer Service Manager was and he gave me the name of the Customer Service Manager-Chris Diesel, who also confirmed that [plaintiff] did not have a supervisory role in the Customer Service Dept., nor was she a V.P. at the firm and that he was her manager and she was a Customer Service Representative.
According to Kasindorf's June 28, 2002 memo, he made additional calls to Beach Trading on June 27 and 28, each time confirming that plaintiff was a customer service representative.[2] At his deposition, Kasindorf admitted that he never asked to speak to Albert Mosseri or a corporate *890 officer at Beach Trading about plaintiff. Although Hizami recalled receiving phone calls from a prospective employer inquiring about plaintiff, he could not recall any details about the calls.
According to his memo, Kasindorf terminated plaintiff's employment on June 28, 2002, "because she had been hired under fraudulent terms and she mis-represented her previous position on her resume." In contrast to these statements in his memo, Kasindorf testified in a deposition that he decided to fire plaintiff before calling Beach Trading. He had planned to use the alleged misrepresentations, however, to invalidate plaintiff's contractual right to receive severance pay.
At his deposition, Kasindorf indicated that plaintiff's misrepresentation played a minor role in his decision to terminate her employment. Plaintiff contends, however, that Kasindorf never mentioned that she was being terminated for poor performance. His decision, according to plaintiff, was based exclusively on what Beach Trading had told him about her employment history. At the time of her termination, plaintiff had worked at HRK for less than two weeks. Her claim for sixty-day severance pay was settled for $13,000.

II

Standard of Review
In reviewing the dismissal of a complaint on summary judgment, we apply the same legal standards as the Law Division. We must determine whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the disputed issues in favor of the non-moving party. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-41, 666 A.2d 146 (1995).
If there is a genuine issue as to any material fact, then summary judgment should be denied. R. 4:46-2(c). Where issues of credibility are presented, summary judgment is generally inappropriate. Brill, supra, 142 N.J. at 540, 666 A.2d 146. It is "not the court's function to weigh the evidence and determine the outcome but only to decide if a material dispute of fact existed." Gilhooley v. County of Union, 164 N.J. 533, 545, 753 A.2d 1137 (2000). Accord Parks v. Rogers, 176 N.J. 491, 502, 825 A.2d 1128 (2003); Mandel v. UBS/PaineWebber, Inc., 373 N.J.Super. 55, 71, 860 A.2d 945 (App.Div.2004), certif. denied, 183 N.J. 213-14, 871 A.2d 91 (2005).

Negligent Misrepresentation
Plaintiff argues that the trial court erred in dismissing her negligent misrepresentation claim without evaluating the existence of issues of fact or making conclusions of law. She contends that there are genuine issues of fact as to whether her employment was terminated because Kasindorf believed she had misrepresented herself on her resume (as she contends), or based on poor performance (as defendants contend). We agree in both respects.
In the usual negligent misrepresentation case, the plaintiff is the direct recipient of the statement alleged to have been negligently provided. Here, although plaintiff was not the recipient of the misinformation, we hold that she is nevertheless entitled to assert a cause of action for negligent misrepresentation, because she falls within the class of individuals injured by its dissemination.
"A cause of action for negligent misrepresentation may exist when a party negligently provides false information." Karu v. Feldman, 119 N.J. 135, 146, 574 A.2d 420 (1990). A "negligent *891 misrepresentation constitutes `[a]n incorrect statement, negligently made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss ... sustained as a consequence of that reliance.'" McClellan v. Feit, 376 N.J.Super. 305, 317, 870 A.2d 644 (App.Div.2005) (quoting H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334, 461 A.2d 138 (1983)). See also Kaufman v. i-Stat Corp., 165 N.J. 94, 109, 754 A.2d 1188 (2000); Union Ink Co. v. AT & T Corp., 352 N.J.Super. 617, 646, 801 A.2d 361 (App.Div.), certif. denied, 174 N.J. 547, 810 A.2d 66 (2002).
In order to determine whether any statements by defendants were negligently made, it is necessary to determine whether defendants owed plaintiff a duty to exercise reasonable care in communicating facts about her employment to prospective employers and, if so, whether communication of false information was a breach of that duty.
"The determination of the existence of a duty is a question of law for the court." Petrillo v. Bachenberg, 139 N.J. 472, 479, 655 A.2d 1354 (1995); Sanchez v. Independent Bus Co., 358 N.J.Super. 74, 80, 817 A.2d 318 (App.Div.2003). The Supreme Court has recently reaffirmed its holding in Petrillo, outlining the basic elements of the tort of negligent misrepresentation, in the context of an attorney's duty to non-clients:
Attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorneys' representations and the non-clients are not too remote from the attorneys to be entitled to protection. The Restatement's requirement that the lawyer invite or acquiesce in the non-client's reliance comports with our formulation that the lawyer know, or should know, of that reliance. No matter how expressed, the point is to cabin the lawyer's duty, so the resulting obligation is fair to both lawyers and the public.
[Banco Popular of North America v. Gandi, 184 N.J. 161, 180, 876 A.2d 253 (2005) (quoting Petrillo, 139 N.J. at 483-84, 655 A.2d 1354).]
Thus, under the Banco Popular/Petrillo paradigm, the guiding principle for the imposition of liability is fairness to both the party making the representation and to the party aggrieved by its dissemination.
New Jersey, like many states, has not determined whether an employer has an affirmative duty to respond to a reference inquiry. See Kiren Dosanjh, Annotation, Former Employer's or Supervisor's Tort Liability to Prospective Employer or Third Person for Misrepresentation or Nondisclosure in Employment Reference, 68 A.L.R. 5th 1 (1999). "Employers who choose to respond to a reference inquiry, however, may be held liable for negligent misrepresentation based on misleading or incomplete statements made in employment references." Ibid.
No court in this State has addressed the issue of whether to hold an employer who chooses to respond to an inquiry liable for the tort of negligent misrepresentation in providing employment references. Most of the out-of-state cases have dealt with situations in which the prospective employer or third persons have suffered physical injury and the former employer failed to disclose violent tendencies or misrepresented the employee's nature or character. Such questions are not at issue in this case. See, e.g., Restatement (Second) of Torts, § 311 (1965); Randi W. v. Muroc Joint Unified Sch. Dist., 14 Cal.4th 1066, 60 Cal.Rptr.2d 263, 929 P.2d 582 (1997) (writer of a letter of recommendation who *892 failed to disclose disciplinary action taken against former employee for sexual misconduct held liable for negligent misrepresentation when student at school who hired employee was molested, since risk of harm was a substantial, foreseeable risk); Davis v. Bd. of County Comm'rs of Dona Ana County, 127 N.M. 785, 987 P.2d 1172 (App. 1999) (employer who gave favorable recommendation for employee despite fact that employee had been investigated for allegedly sexually harassing female inmates owed a duty to prospective employers and foreseeable third parties not to make negligent misrepresentation of employee's record when substantial risk of physical harm to third party foreseeable).
Because the extension of liability to a former employer for negligently misrepresenting an employee's position with the company, with resulting economic loss, has not been examined by New Jersey courts, we will evaluate other comparable legal standards for guidance.
The Restatement (Second) of Torts, § 552 (1977), is instructive in this situation. It provides, in relevant part, that:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) ... the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
[Ibid.]
The cause of action for negligent misrepresentation causing economic losses as set forth in § 552, has been recognized by federal courts in New Jersey. See, e.g., Pub. Serv. Enter. Group, Inc. v. Philadelphia Elec. Co., 722 F.Supp. 184, 214 (D.N.J.1989) (nuclear power plant owners' claim against operating owner on theory of negligent misrepresentation, as well as other tort and contract claims, was sufficient to survive motion to dismiss because of disputed facts regarding the contract between the parties and questions of law regarding the defendant's duty to the plaintiffs under the contract and common law); Somarelf v. Am. Bureau of Shipping, 704 F.Supp. 59, 63 (D.N.J.1988) (under maritime law, plaintiff's ability to seek tort-based indemnification from defendant for negligent misrepresentation and recovery is dependent upon resolution of material issues of fact as to reliance and the extent of economic loss).
Pursuant to the Restatement (Second) of Torts, supra, § 552, a plaintiff is a "person or one of a limited group of persons for whose benefit and guidance" the information is supplied. Thus, if a jury determines that Kasindorf told defendants that he was calling to verify plaintiff's employment, defendants, by voluntarily responding to the inquiry, undertook the duty to "exercise reasonable care or competence" in its response to Kasindorf. Ibid.
A jury determination that defendants voluntarily assumed a duty of care to plaintiff by responding to Kasindorf's inquiry is only the first step in the process. Once this is done, a jury must then determine whether defendants breached that *893 duty. This determination would depend upon resolution of the factual dispute regarding the nature of Kasindorf's inquiry since "[a] user of commercial information cannot reasonably expect its maker to have undertaken to satisfy this obligation unless the terms of the obligation were known to him." Restatement (Second) of Torts, supra, § 552 comment a.
Here, it is undisputed that when Hizami started working at Beach Trading, plaintiff was answering phones in the customer service department at a desk similar to the other customer service representatives, and another employee actually had the title of customer service supervisor. Thus, by way of defense, defendants argue that Hizami's statement, although incorrect, was not negligently made. It was, rather, a logical inference drawn from the facts available to him. This argument is undermined by Kasindorf's memos, in which he indicates that he spoke with several Beach Trading employees, who repeated the same factually incorrect statement about plaintiff's employment status while at Beach Trading.
We reject, however, plaintiff's argument that, under these circumstances, the dissemination of a factually incorrect account of her employment history constitutes negligence per se. Based on the record before us, there is a genuine factual dispute as to whether the other employees knew or should have known of plaintiff's actual title.
Giving plaintiff the benefit of all facts and inferences on review of a dismissal of a claim on summary judgment, we must accept, as an established fact, that: (1) Kasindorf called Beach Trading to verify plaintiff's references; and (2) Hizami gave Kasindorf false information as to plaintiff's former position. It is for a jury to determine whether defendants' actions here were reasonable, or amounted to negligent dissemination of false information.
The nature of the inquiry is also hotly disputed. With respect to the Kasindorf phone call, Hizami testified that he knew the caller was a prospective employer calling to verify plaintiff's employment history at Beach Trading. This is, of course, contrary to defendants' claim that Hizami was innocently supplying a title to a customer calling to praise plaintiff for good service. The record is silent as to the other employees Kasindorf allegedly spoke to regarding plaintiff.
There is also a clear question of fact concerning whether Hizami and/or the other employees who may have spoken to Kasindorf were acting within the scope of their employment, thereby rendering Beach Trading potentially liable under the doctrine of respondeat superior. "Conduct is generally considered to be within the scope of employment if, `it is of the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master.'" Di Cosala v. Kay, 91 N.J. 159, 169, 450 A.2d 508 (1982) (quoting Restatement (Second) of Agency, § 228 (1957)).
From the record before us, we have no way of knowing whether Hizami and the other employees who may have spoken to Kasindorf were authorized to respond to inquiries about former employees, even those within their department. This issue must be thoroughly explored before a court, performing its gate-keeping function in the context of deciding a summary judgment motion, can permit a jury to impose liability upon an employer for disseminating inaccurate information about a former employee's work history.
There is also a factual dispute concerning the reasons for Kasindorf's decision to *894 terminate plaintiff's employment. It is undisputed that Kasindorf advertised only for a customer service representative, but hired plaintiff as a customer service manager based on the position she held with Beach Trading. It is equally undisputed that Kasindorf was not able to verify plaintiff's employment with Beach Trading until after she accepted the position with HRK, because plaintiff asked him not to contact Beach Trading while she was still employed there.
Plaintiff thus argues that it was reasonable for Kasindorf to have called Beach Trading to verify her employment, and to have relied on the accuracy of the information conveyed to him by Beach Trading. Defendants, however, argue that if Kasindorf had been satisfied with plaintiff's performance, he would have had no reason to verify her employment two weeks after hiring her.
To further complicate matters, Kasindorf testified that he had made the decision to fire plaintiff before calling Beach Trading, and would have fired her regardless of what Beach Trading said about her previous position. His own file memo, however, states that plaintiff was fired "because she had been hired under fraudulent terms and she misrepresented her previous position on the resume." On the other hand, other memos do corroborate defendants' claim that Kasindorf was not satisfied with plaintiff's performance.
In this light, it is a material disputed fact as to whether Kasindorf actually relied on any statement made, or whether he terminated plaintiff for poor performance. The dispute is significant because, if plaintiff was terminated exclusively for poor job performance, she would not have suffered any economic loss as a result of a factually incorrect statement made by any defendant, and the negligent misrepresentation cause of action must fail.
We therefore conclude that plaintiff has alleged sufficient facts with respect to her negligent misrepresentation cause of action to survive the summary judgment motion made. Specifically, there are genuine issues of material fact as to: (1) whether Kasindorf properly notified defendants of the nature and purpose of his inquiry, which could subject defendants to a duty of reasonable care in any voluntary response; (2) once the decision was made to respond to the inquiry, whether communicating the factually incorrect statement breached that duty; (3) whether Kasindorf justifiably relied upon the factually incorrect statement in terminating plaintiff's employment; and (4) whether plaintiff suffered an economic loss as a result.

III

Defamation
We are satisfied that the statement made by defendants is not actionable as a defamatory statement. The standard of review here is de novo. We are not obligated to defer to the trial court's legal rulings. Manalapan Realty v. Manalapan Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
"Defamation imposes liability for publication of false statements that injure the reputation of another." Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 765, 563 A.2d 31 (1989). "In order to prove defamation, a plaintiff must establish, in addition to damages, that the defendant (1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff." Feggans v. Billington, 291 N.J.Super. 382, 390-91, 677 A.2d 771 (App. Div.1996). Fault must also be proven. Ibid. Accord Beck v. Tribert, 312 N.J.Super. 335, 349-50, 711 A.2d 951 (App.Div.), *895 certif. denied, 156 N.J. 424, 719 A.2d 1022 (1998).
In order to determine if a statement is reasonably susceptible of a defamatory meaning, "a court must scrutinize the language `according to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence.'" Printing Mart-Morristown, supra, 116 N.J. at 765, 563 A.2d 31 (quoting Romaine v. Kallinger, 109 N.J. 282, 290, 537 A.2d 284 (1988)). Indeed, "words that are not susceptible of any defamatory interpretation are not actionable, and a cause of action will not lie for such statements." Printing Mart-Morristown, supra, 116 N.J. at 765, 563 A.2d 31.
In this light, the words at issue here, incorrectly reporting plaintiff's employment history, are not susceptible of any defamatory meaning as a matter of law. There is no evidence that defendants intended to cast plaintiff as a liar or as a person who would deliberately falsify information on her resume as a means of defrauding a potential employer.

IV

Tortious Interference
Finally, plaintiff contends that she established a prima facie case for tortious interference with either her contractual relationship with HRK based on the June 11, 2002 letter of employment, and/or the prospective economic advantage in continuing employment with HRK. She again argues that summary judgment should not have been granted because of the factual dispute over the reason for her termination. Defendants counter that plaintiff has failed to produce any evidence that the interference was intentional and malicious. We agree with defendants' position.
A claim for tortious interference with a contract and/or prospective business relationship requires a plaintiff to prove:
(1) [she] had some reasonable expectation of economic advantage; (2) the defendants' actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse; (3) the interference caused the loss of the prospective gain or there was a reasonable probability that the plaintiff would have obtained the anticipated economic benefit, and (4) the injury caused the plaintiff damage.
[Mandel, supra, 373 N.J.Super. at 79-80, 860 A.2d 945.]
See also Dello Russo v. Nagel, 358 N.J.Super. 254, 268-69, 817 A.2d 426 (App.Div. 2003).
In the tortious interference cause of action, malice is defined to mean that the interference was inflicted intentionally and without justification or excuse. DiMaria Constr., Inc. v. Interarch, 351 N.J.Super. 558, 567, 799 A.2d 555 (App. Div.2001), aff'd, 172 N.J. 182, 797 A.2d 137 (2002). Malice is determined on an individualized basis, and the standard used by the court must be flexible, viewing the defendants' actions in the context of the case presented. Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc., 282 N.J.Super. 140, 199, 659 A.2d 904 (App. Div.), certif. denied, 141 N.J. 99, 660 A.2d 1197 (1995).
Here, there is no evidence that Hizami or the other employees intended to induce or cause Kasindorf to terminate plaintiff's employment by giving false information.

V

Conclusion
The order of the Law Division dismissing plaintiff's cause of action based on the torts of defamation and intentional interference *896 with a contractual relationship is affirmed. The order dismissing plaintiff's complaint based on the tort of negligent misrepresentation is reversed. The matter is remanded for further proceedings consistent with this decision.
NOTES
[1] Judge Eichen did not participate in oral argument. However, with the consent of counsel she has joined in this opinion. R. 2:13-2(b).
[2] At his deposition, Kasindorf indicated that some of the calls to Beach Trading were taped. The record does not contain a transcript of the calls or copies of any recordings.