**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4352-17T1

BETH LASCH,

    Plaintiff-Appellant,

v.

STUART KOPERWEIS and KBBC
KEYPORT BAYFRONT BUSINESS
COOPERATIVE,

    Defendants-Respondents.

_____

> Submitted March 25, 2019 – Decided May 31, 2019
>
> Before Judges Haas and Mitterhoff.
>
> On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3917-16.
>
> Beth Lasch, appellant pro se.
>
> Manna & Bonello, PA, attorneys for respondents (John L. Bonello, on the brief).

PER CURIAM

Plaintiff Beth Lasch appeals pro se from the trial court's April 13, 2018 order granting summary judgment to defendants Stuart Koperweis and the Keyport Bayfront Business Cooperative ("KBBC") on her trade secret and tortious interference with prospective business relationship claims. We affirm substantially for the reasons set forth in the Honorable Mara E. Zazzali-Hogan, J.S.C.'s well-reasoned oral decision. We add only the following comments.

I.

We derive the following facts from the record below. The Borough of Keyport established a "special improvement district" ("SID")[1] with a "district management corporation" ("DMC")[2], in accordance with N.J.S.A. 40:56-65 to -89.[3] By borough ordinance, Keyport designated a SID known as the "Business

---

[1] A SID is "an area within a municipality designated by municipal ordinance as an area in which a special assessment on property within the district shall be imposed for the purposes of promoting the economic and general welfare of the district and the municipality." N.J.S.A. 40:56-66(b).

[2] A SID's DMC is "an entity created by municipal ordinance or incorporated pursuant to Title 15A of the New Jersey Statutes and designated by municipal ordinance to receive funds collected by a special assessment within a special improvement district, as authorized by this amendatory and supplementary act." N.J.S.A. 40:56-66(c).

[3] The purpose of the legislation is to "assist municipalities in promoting economic growth and employment within business districts." N.J.S.A. 40:56-65(b)(1).

Improvement District" ("BID").[4]  Keyport's DMC is a non-profit corporation known as the Keyport Business Alliance, Inc. (also known as the Keyport Bayfront Business Cooperative).  Defendant Koperweis served as the Executive Director of the KBBC.

Plaintiff is a resident of Keyport, New Jersey, but she does not have a business located in Keyport's BID.  Plaintiff's business includes producing commercial advertisements on cable television and on YouTube.  She operates several municipality-oriented YouTube channels, and she solicits business owners in those municipalities.

On April 17, 2015, plaintiff sent an email to the KBBC in which she referenced "a meeting last fall where I presented the idea of running local TV commercials promoting Keyport."  She indicated that "[a]ttached[] is a proposal to review with more details about airing in Monmouth County on cable TV."  The email did not indicate that the proposal or email should remain confidential. Plaintiff never subsequently informed defendants that the email or proposal should remain confidential.

---

[4]  Keyport, NJ, Mun. Code (1988),
http://www.keyportonline.com/filestorage/4135/5720/5882/5888/BOROUGH_
OF_KEYPORT_ORDINANCES.pdf.

A-4352-17T1

Plaintiff's proposal included two "projects."  Project #1 called for "8 commercials for Keyport to air on cable TV in Monmouth and Middlesex counties, running on major TV channels . . . [and to] run the ads in the cable TV's digital opportunities . . . , for those who look for local news online."  Project #2 called for one thirty-second "commercial for the Spring activities coming up."  The ad would run on cable TV in Monmouth and Middlesex counties and "in the cable TV's digital opportunities."

In May 2015, after plaintiff submitted the proposal, she spoke to defendant Koperweis, who informed her that there was no video budget.  Plaintiff did not bid on a project involving defendants.

In or about June 2016, plaintiff discovered that a YouTube channel titled "Visit Keyport" had been created and videos had been uploaded.  A company known as "Direct Development," which trades a "Market Me," and which was hired to do video production work for defendants, created the page and uploaded the videos.  The "Visit Keyport" YouTube channel did not include the same advertisements that were provided for in plaintiff's proposal.  The KBBC also did not air commercials on cable TV in Monmouth or Middlesex counties, nor on major TV channels.

A-4352-17T1

Plaintiff filed the instant action against defendants Stuart Koperweis and the KBBC alleging that defendants appropriated her trade secret by creating a YouTube channel and utilizing the proposal that she provided without paying for its use. As part of plaintiff's lawsuit, she claimed $55,000 in damages, which is not supported by any documentary evidence in the record.

At oral argument on defendants' motion for summary judgment, plaintiff conceded that the KBBC was producing videos prior to the creation of their YouTube channel, but contended that they were of a lower quality and they did not promote businesses. Plaintiff further conceded that defendants did not produce the eight videos that she included in her proposal, but she contended that they produced a video advertisement for a garden walk, which was included in her proposal, and a radio advertisement for the township's Memorial Day parade.

In an oral decision, the trial court granted summary judgment to defendants. The trial found that plaintiff's proposal was not a trade secret because there was no indication that she attempted to keep the information confidential.

Regarding the tortious interference claims, the trial court further found that giving plaintiff the benefit of every inference in her favor, her YouTube

channel ideas gave her "a reasonable expectation of economic advantage" because her business is primarily producing videos for businesses. Nonetheless, the court granted summary judgment based on its finding that defendants did not act unlawfully, maliciously, or unjustly toward plaintiff and that plaintiff did not provide any support for her claim of damages. The instant appeal followed.

II.

On appeal, plaintiff argues that the trial court erred by not reopening discovery, despite her failure to make a motion for same. We disagree.

Generally, "issues not raised below will . . . not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 339 (2010). However, "appellate court[s] may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court[,]" if "it is of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2.

Here, we decline to reach the merits of plaintiff's argument that the trial court should have reopened discovery. See M.C. III, 201 N.J. at 339; R. 2:10-2. Discovery in the instant matter ended on October 1, 2017 and oral argument

took place on April 13, 2018. Plaintiff did not make a motion to extend discovery at any point between the discovery end date and oral argument.

Plaintiff argues that, being a pro se party, she was not aware of all of the intricacies of discovery. However, the trial court relaxed the rules for plaintiff on several occasions, including considering her opposition to defendants' motion for summary judgment despite its procedural deficiencies. Further, the first time she suggested reopening discovery was during the summary judgment oral argument. See, e.g., A.T. v. Cohen, 445 N.J. Super. 300, 305 n.7 (App. Div. 2016) (refusing to address the merits of the plaintiff's argument where "it was not properly raised to the trial judge").

## III.

Although plaintiff's sole argument on appeal was that the trial court erred by not reopening discovery, for the purposes of completeness we will address her claims on the merits. We conclude that the trial court correctly granted summary judgment to defendants on the trade secret and tortious interference claims.

The standard of review for a grant of summary judgment is de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

7

> [W]hen deciding a motion for summary judgment under Rule 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

New Jersey Trade Secrets Act

"In any trade secret case, the Court must first determine whether there exists, in fact, a trade secret." Baxter Healthcare Corp. v. HQ Specialty Pharma Corp., 157 F. Supp. 3d 407, 424 (D.N.J. 2016) (citing Merckle GmbH v. Johnson & Johnson, 961 F. Supp. 721 (D.N.J. 1997)). Prior to adopting the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 to -9 (the "Act"), trade secret claims were decided under common law. The Act "supercede[s] conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret." N.J.S.A. 56:15-9(b). Under the Act, a

> "[t]rade secret" means information, held by one or more people, without regard to form, including a formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process, that: (1) Derives independent economic value, actual or

> potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
>
> [N.J.S.A. 56:15-2.]

"The subject matter of a particular trade secret . . . must be secret. In other words, '[m]atters of public knowledge' or information 'completely disclosed by [marketed] goods' cannot qualify as trade secrets." Baxter Healthcare, 157 F. Supp. 3d at 424 (citations omitted) (alterations in original) (internal quotations omitted).

Here, plaintiff's proposal does not meet the statutory definition of trade secret. See N.J.S.A. 56:15-2. Initially, plaintiff's proposal provided for advertisements that would be uploaded to plaintiff's Keyport YouTube channel and aired on cable television. However, as YouTube dominates the internet in terms of video-sharing and video-hosting, plaintiff's concepts for both video advertising and a Keyport YouTube channel were clearly "readily ascertainable by proper means." See ibid.[5]

---

[5] See Jay E. Grenig & William C. Gleisner, III, The Impact of Social Networking on e-Discovery, 1 eDiscovery & Digital Evidence § 14:4 (Oct. 2018) (footnote omitted) ("YouTube is a social networking system built around

Moreover, even if plaintiff could satisfy the first prong of the test, she did not establish that her proposal was "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." See N.J.S.A. 56:15-2. There is no indication or marking on either the email plaintiff sent to defendants or the attached proposal that the contents or communication should remain confidential. Further, as plaintiff voluntarily provided a copy of the proposal to defendants, voluntarily explained her ideas, and did not indicate that the proposal should remain confidential, plaintiff's proposal does not qualify as a trade secret. See ibid.

Common Law Trade Secret

Under New Jersey's common law, "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Hammock v. Hoffman-LaRoche, Inc., 142 N.J. 356, 384 (1995) (quoting Smith v. BIC Corp., 869 F.2d 194, 199 (3d

---

videotapes uploaded from users and often accompanied by a comments section in the nature of a blog. . . . YouTube makes the dissemination of personal and potentially embarrassing videotape information very easy for the most novice computer user. With its simple interface, YouTube makes it possible for anyone with an Internet connection to post a video.")

Cir. 1989)). "[I]nformation that is in the public domain . . . cannot be protected as trade secrets." Ibid.

"[T]he definition of trade secret does not include a marketing concept or a new product idea." Johnson v. Benjamin Moore & Co., 347 N.J. Super. 71, 96 (App. Div. 2001) (citing Hudson Hotels Corp. v. Choice Hotels Int'l, 995 F.2d 1173 (2d Cir. 1993)). In Johnson, the plaintiff met with one of the defendant's employees about an idea for a new product that the plaintiff wanted to submit. Id. at 78-79. The defendant's employee suggested that the plaintiff put his proposal in writing, and the plaintiff complied. Id. at 79. According to the plaintiff, the defendant's employee called and informed that he was going to present the proposal to his superiors. Ibid.

The proposal was for a "Mural in a Can[,]" a step-by-step, do-it-yourself art project. Ibid. The first page of the proposal included the following written statement, which both parties signed:

> I UNDERSTAND IT IS YOUR PRACTICE TO ENTERTAIN OR RECEIVE IDEAS OR SUGGESTIONS FOR THE MERCHANDISING OF BENJAMIN MOORE PAINT PRODUCTS. I HAVE DEVELOPED SUCH AN IDEA AND PRODUCT FOR SUBMISSION AND WOULD LIKE TO DISCLOSE IT TO YOU. I UNDERSTAND THAT IF YOU USE IT YOU WILL PAY ME A REASONABLE COMPENSATION BASED ON CURRENT INDUSTRY STANDARDS.

PLEASE ACKNOWLEDGE THE RECEIPT OF THIS LETTER WITH YOUR DATED SIGNATURE BELOW.

[Ibid.]

The plaintiff also provided the defendant with a disclaimer that provided for an initial fee of $500,000 and a royalty fee of $25,000 annually, if the defendant utilized the plaintiff's "Mural in a Can" product proposal. Id. at 80. The defendant stated that he never saw the disclaimer, while the plaintiff states that it was included with his submitted proposal. Ibid.

The defendant subsequently worked with Crayola on the implementation of the Crayola Paints program, which included the "umbrella concept" of "a line of paint and related decorating products positioned for parents who want to create fun and imaginative environments for, and with, their children." Id. at 80-81.

When the plaintiff saw an advertisement for "Crayola Paints," he sued the defendant and alleged, among other things, that the defendant misappropriated trade secrets by developing a product for which the plaintiff had submitted a proposal. Id. at 77, 81. The trial court granted summary judgment to the defendant on all of the plaintiff's claims. Id. at 75. We affirmed and held that

12

the "[p]laintiff's idea for Mural in a Can and his broad concept of marketing materials for murals for the masses are not trade secrets." Id. at 96.

Here, plaintiff's trade secret claim is clearly weaker than the plaintiff's in Johnson. Here, unlike in Johnson, plaintiff did not take steps to protect her proposal. See id. at 79-80. As in Johnson, plaintiff voluntarily provided her proposal and information about her services to defendants. See id. at 79. However, unlike the plaintiff in Johnson, she did not take any steps to protect her proposal. See ibid. For instance, she did not include a provision for initial or royalty payments in the event her proposal was implemented, nor did she include an acknowledged signed receipt. See ibid. Thus, we conclude that the trial court correctly rejected plaintiff's trade secret claim under the common law doctrine.

Common Law "Use-of-Idea"

> [W]here a person communicates a novel idea to another with the intention that the latter may use the idea and compensate him for such use, the other party is liable for such use and must pay compensation if he actually appropriates the idea and employs it in connection with his own activities.
>
> [Id. at 84 (quoting Flemming v. Ronson Corp., 107 N.J. Super. 311, 317 (L. Div. 1969), aff'd, 114 N.J. Super. 221 (App. Div. 1971)).]

To state a claim for "use of idea" the party must "establish as a perquisite to relief that (1) the idea was novel; (2) it was made in confidence, and (3) it was adopted and made use of." Ibid. In Johnson, we held that the trial court correctly granted summary judgment to the defendant's on the plaintiff's "use of idea" claim because his "Mural in a Can" proposal was not "novel." Id. at 85.

Additionally, YouTube is "recognized by experts as the clear leader in the [social media] industry." Ibid. See also Franklin Graves & Michael Lee, The Law of YouTubers, 9 No. 5 Landslide 8, 9 (2017) ("It's undeniable that, by generating billions of daily views and hundreds of millions of hours in watch time over the course of a single day, YouTube is the go-to destination for video consumption on the internet.") (footnotes omitted).

In the instant matter, we conclude that plaintiff cannot establish a claim for common law "use of idea." First, plaintiff's proposal was not novel. See id. at 84. Advertising, generally, is very common on all platforms. Specifically, as YouTube is the most used social media platform, creating video advertisements for a channel dedicated to a township and using YouTube as the means to disseminate the advertisements is not novel. See Graves & Lee, 9 No. 5 Landslide at 9.

Second, even if plaintiff's proposal was novel, as stated above, they were not made in confidence. See Johnson, 347 N.J. Super. at 84.

Lastly, plaintiff has not established that defendants made use of her proposal. See ibid. Plaintiff submitted a proposal that included ideas for eight commercials that would be uploaded to plaintiff's Keyport YouTube channel and would also air on cable television. Defendants created one video Spring-themed commercial and one radio commercial about Keyport's Memorial Day Parade. None of plaintiff's other ideas or concepts from her written proposal were created. Thus, defendants did not make use of her proposal and plaintiff cannot state a claim for "use of idea." See ibid.

Tortious Interference

In an action for tortious interference with a prospective business relationship, a plaintiff is required to prove that:

> (1) [she] had some reasonable expectation of economic advantage; (2) the defendants' actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse; (3) the interference caused the loss of the prospective gain or there was a reasonable probability that the plaintiff would have obtained the anticipated economic benefit, and (4) the injury caused the plaintiff damage.

[Singer v. Beach Trading Co., Inc., 379 N.J. Super. 63, 81 (App. Div. 2005) (quoting Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 79-80 (App. Div. 2004)) (alteration in original).]

In determining whether a party acted with malice,

the ultimate inquiry is whether the conduct was "both injurious and transgressive of generally accepted standards of common morality or of law." In other words, was the interference by defendant "sanctioned by the rules of the game." There can be no tighter test of liability in this area than that of the common conception of what is right and just dealing under the circumstances.

[Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 757 (1989) (quoting Sustick v. Slatina, 48 N.J. Super. 134, 144 (App. Div. 1957)).]

Here, the trial court did not err by granting summary judgment to defendants on plaintiff's tortious interference claim. Initially, granting plaintiff every inference in her favor, she established that she had "some reasonable expectation of economic advantage." Singer, 379 N.J. Super. at 81. At oral argument she stated that she was hired to make videos for at least two local businesses and that she primarily gets her business by soliciting the businesses personally.

However, plaintiff cannot establish any of the other elements of tortious interference. As the trial court found, defendants did not act "malicious[ly] in

16

the sense that the harm was inflicted intentionally and without justification or excuse."  Ibid.  Even accepting plaintiff's allegation that defendants utilized her proposal when they created a YouTube channel and uploaded videos of the town, they were not legally prohibited from doing so.  Plaintiff sent defendants an unsolicited, non-proprietary proposal for a basic advertising idea.  In the absence of wrongdoing, utilizing those ideas in their own marketing scheme is not "transgressive of generally accepted standards of common morality or of law" or a violation of "the common conception of what is right and just dealing under the circumstances."  See ibid.

Additionally, there was no "reasonable probability that . . . plaintiff would have obtained the anticipated economic benefit" in the absence of defendant KBBC creating video advertisements for the local businesses.  See ibid. Although plaintiff stated that she worked with local businesses in the past, she came forth with no additional evidence to suggest that the forty-one businesses she solicited would have agreed to work with her in the absence of defendant KBBC's making video advertisements free of charge.

Lastly, plaintiff has not proven damages.  "Anticipated profits that are too remote, uncertain, or speculative are not recoverable."  Desai v. Bd. of Adj. of Phillipsburg, 360 N.J. Super. 586, 595 (App. Div. 2003), certif. denied, 177 N.J.

492 (2003) (citing <u>Stanley Co. of Am. v. Hercules Powder Co.</u>, 16 N.J. 295, 314 (1954)).  Plaintiff claims $55,000 in damages, primarily based on the contract between defendant KBBC and Direct Development.  However, she provided no expert or lay testimony regarding how much money she would have received if she contracted with defendants.  She also did not provide any prior contracts or receipts to substantiate her damages.  Thus, her claim for damages is speculative and uncertain, and the trial court did not err in granting summary judgment to defendants on plaintiff's tortious interference claim.  <u>See</u> <u>ibid.</u>

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we find them without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION